**WO**  NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebel Talbot,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-15-08127-PCT-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Rebel Talbot's Application for Disability Insurance Benefits (DIB) by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint on July 20, 2015, asking this Court to review the denial of her benefits. (Doc. 1.) The Court has reviewed the briefs (Docs. 12, 20, 21), as well as the Administrative Record (Doc. 11, R.) and now affirms the Administrative Law Judge's decision (R. at 9–27), as upheld by the Appeals Council (R. at 1–6).

**I.  BACKGROUND**

Plaintiff filed an application for DIB in November 2011, initially alleging disability beginning October 20, 2010. (R. at 12, 167, 169.) After Plaintiff's application was denied initially and on reconsideration, Plaintiff requested a hearing, which an Administrative Law Judge (ALJ) held on January 8, 2014. (R. at 33–60.) On February 4, 2014, the ALJ issued a decision denying Plaintiff's application. (R. at 9–27.) After the ALJ denied Plaintiff's request, the Appeals Council (AC) denied Plaintiff's request for review of the ALJ's decision on June 23, 2015, making the ALJ decision the final

decision of the Commissioner of Social Security. (R. at 1–6.) The present appeal followed.

The Court has reviewed the record, including hearing testimony and medical evidence, in its entirety and provides a short summary below.

### A.   Medical Evidence

Plaintiff initially stated she was disabled because of diabetes, fibromyalgia, sjogren's syndrome, seizures, atrial fibrillation, high blood pressure, sleep apnea, and anxiety/depression. (R. at 62.) Plaintiff has also been diagnosed with hypertension. (R. at 295.)

#### 1.   Dr. Peter Powers

Plaintiff saw her treating physician, Dr. Powers, from August 2009 to October 2013. (*See* R. at 319–447, 457–59, 1144–224.) Dr. Powers diagnosed Plaintiff with hypertension, hyperlipidemia, sleep apnea, atrial fibrillation, ADD, fibromyalgia, depression, and type 1 diabetes mellitus. (*See, e.g.*, R. at 321, 326, 329, 338, 339, 568, 1150.) He noted Plaintiff felt depressed (*see, e.g.*, R. at 327), and sometimes was lacking in personal grooming (R. at 327). Dr. Powers also noted Plaintiff continually struggled with diabetes and fibromyalgia and took medication to help her with her related fatigue and pain. (R. at 325, 511, 514, 517.)

Dr. Powers's treatment notes show Plaintiff struggled with insomnia and sleep apnea. (R. at 325.) At times, Plaintiff could not sleep without using Ambien (R. at 325), but at other times, Plaintiff reported sleeping well just using melatonin (R. at 322). Plaintiff was treated at Sleep Disorders Center of Prescott Valley from 2010 to 2013 where she was initially prescribed a VPAP machine, but then was switched to a CPAP machine and an Adapt ASV machine after she had issues with the VPAP machine. (R. at 274–75, 280, 606–25.) In 2013, Plaintiff reported she was sleeping better since using the ASV machine and that medication helped her sleep. (R. at 606.)

From 2008 to 2012, while mostly under the care of Dr. Powers, Plaintiff went to the emergency room multiple times due to incidents involving a hypertensive emergency

1  and rapid heart rate (R. at 416–20, 758, 770), a fainting episode (R. at 421–23, 810–12),
2  nausea and vomiting (R. at 821–23, 839–41, 858, 880, 885), and diabetic ketoacidosis
3  (serious diabetes complication) (R. at 425–29, 433–39, 831, 874–75, 890). In June 2012,
4  Plaintiff underwent an atrial flutter ablation procedure that was successful, and Plaintiff's
5  treatment providers deemed her heart-related issues resolved. (R. at 293–318, 531.)

6        In 2013, while still under Dr. Powers's care, Plaintiff continued to report that she
7  struggled with depression, anxiety, and concentration, but at times, felt better with the use
8  of medication. (R. at 1151–56.) Plaintiff also reported increased pain related to
9  fibromyalgia, difficulty walking, and that she relied on others for rides. (R. at 1167.)

10       Dr. Powers wrote a letter on Plaintiff's behalf dated March 21, 2012. (R. at 457–
11 59.) He noted Plaintiff's diabetes had been poorly controlled and required recurrent
12 emergency room visits. (R. at 457.) He also stated Plaintiff suffered from fatigue due to
13 diabetes, fibromyalgia, insomnia, and sleep apnea. (R. at 457.) Dr. Powers indicated
14 Plaintiff suffered from depression and had difficulty sitting for more than 45 minutes and
15 standing for more than 15 minutes. (R. at 457.)

16       Dr. Powers also completed a questionnaire dated April 3, 2013, for the period of
17 March 2012 to April 2013. (R. at 568–73.) He indicated Plaintiff's diabetes issues were
18 frequently severe enough to interfere with attention and concentration, Plaintiff was
19 incapable of handling even low stress jobs, her medications caused side effects including
20 drowsiness, and overall, Plaintiff was overwhelmed by her various illnesses. (R. at 569.)
21 With regard to Plaintiff's limited functionality, Dr. Powers stated she can only sit and
22 stand for 30 minutes at one time, and can only sit and stand/walk for a total of 30 minutes
23 in an 8-hour workday. (R. at 569–70.) He also noted other limitations including that
24 Plaintiff needed breaks every 30 minutes to check blood glucose or take medications. (R.
25 at 570.) He further stated Plaintiff is in chronic and constant pain and a state of fatigue.
26 (R. at 573.) In another questionnaire also dated April 3, 2013, Dr. Powers noted similar
27 limitations and stated he based his medical findings on Plaintiff's peripheral neuropathy
28 and instability of gait due to her diabetes. (R. at 574–75.)

### 2. Dr. Katherine Cheeves

Plaintiff saw Dr. Cheeves in 2009 and from December 2012 to May 2013, and she diagnosed Plaintiff with Depression Not Otherwise Specified (NOS). (R. at 561–62, 576–81.) Dr. Cheeves noted Plaintiff was severely fatigued, had a restricted affect and depressed mood, and was very low energy (R. at 576–77), but sometimes reported that Plaintiff's affect and mood seemed improved (R. at 578).

Dr. Cheeves completed a medical assessment of Plaintiff's mental ability to do work-related activities in which she stated Plaintiff's abilities were "fair" or "poor" for all work-related activities. (R. at 561.) Dr. Cheeves stated Plaintiff's symptoms were related to her diagnosis and that she had treated Plaintiff for the related issues for three years. (R. at 562.) She also stated Plaintiff's conditions at issue started in 2010 and were permanent impairments worsening with time. (R. at 562.)

### 3. Other Psychological Medical Evidence

On April 21, 2012, Dr. Daniel Chatel evaluated Plaintiff for anxiety and depression and diagnosed her with Depression NOS. (R. at 460–65.) Dr. Chatel did not find Plaintiff had any limitations associated with her condition that were expected to last 12 continuous months and that she did not have any issues with understanding and memory, sustained concentration and persistence, social interaction, or adapting to change. (R. at 464.)

Dr. Shannon Tromp evaluated Plaintiff on November 23, 2012, and diagnosed her with Major Depressive Disorder. (R. at 545–51.) Dr. Tromp stated Plaintiff had limitations associated with her condition that could be expected to last 12 continuous months, but like Dr. Chatel, found she did not have limitations in the functional areas listed above. (R. at 549.)

## B. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ on January 8, 2014. (*See* R. at 33–52.) She testified she is in constant, all-over body pain that is 9 on a scale of 1 to 10. (R. at 39–40, 43.) While medication sometimes helps her pain, it does not always, and she

experiences side effects that make her tired. (R. at 40, 48.) Plaintiff's diabetes is semi-controlled, but she experiences episodes of irregular blood sugar that last half an hour to a few hours twice a week. (R. at 44–45.) Plaintiff testified that her heart condition seemed to improve after her ablation procedures. (R. at 39–40.)

Plaintiff is also in a constant state of depression that impacts her ability to think and concentrate. (R. at 39–40, 47.) She spends most of her days lying down and sitting. (R. at 46.) Her husband and son do the cooking, housework, and shopping. (R. at 49.) Plaintiff sometimes must be reminded to change her clothes and take her medications. (R. at 49–50.) She has a fear of driving, and her husband and friends drive her as needed. (R. at 42.)

Plaintiff completed a Function Report in May 2012. (R. at 219–27.) She stated her conditions made her unable to walk, stand, lift anything, write, or type even for short periods of time. (R. at 219.) She also has difficulty gathering her thoughts and rarely leaves her home due to depression. (R. at 219.) Plaintiff stated she is able to prepare small meals and can assist with laundry and taking care of the family pets. (R. at 220–21.) She also does some short shopping trips, approximately 2 to 3 times a week. (R. at 221.) In her Function Report completed in September 2012, she stated she spends at least 2 to 3 days per week in bed due to chronic pain and fatigue. (R. at 237.)

### C.     The ALJ's Opinion

ALJ Patricia A. Bucci issued an opinion dated February 4, 2014, in which she concluded Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. at 12, 27.) The ALJ began her analysis by stating that Plaintiff met the insured status requirement and had not engaged in substantial gainful activity since her alleged onset date of October 20, 2010. (R. at 12.) The ALJ then listed hypertension, paroxysmal supraventricular tachycardia and atrial fibrillation, diabetes mellitus, sleep apnea, fibromyalgia, seizure disorder, and obesity (mild) as severe impairments. (R. at 14.) The ALJ also noted other diagnoses, but found Plaintiff's other medical issues were managed medically or did not cause significant issues, and thus were non-severe. (R. at

14–15.) With regard to Plaintiff's mental impairments, the ALJ found Plaintiff's affective disorder did not cause more than minimal limitation in her ability to perform basic mental work activities and was thus non-severe. (R. at 17–18.)

Proceeding with the five-step inquiry, the ALJ found that the impairments or combination of impairments did not meet or medically equal the severity of the applicable listed impairments. (R. at 18.) The ALJ then stated her finding that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) with some restrictions. (R. at 19.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's testimony and prior statements as part of her application for benefits were not fully credible or consistent with an individual who is precluded from all work. (R. at 20.) She further stated that while she found Plaintiff sincere, Plaintiff's allegations of pain and fatigue were extreme and unsupported by the record. (R. at 20–21.) The ALJ found that Plaintiff's medical record supported a finding that despite having numerous chronic conditions, her conditions have improved and/or are controlled with her treatment regimen. (R. at 20–22.) The ALJ also cited Plaintiff's ambiguous testimony regarding her separation from work and her husband's statement regarding her daily activities as further diminishing Plaintiff's credibility. (R. at 24.)

The ALJ gave significant weight to the opinions of State agency non-examining medical consultants, finding their opinions were consistent with the objective evidence and documented daily activities in the record. (R. at 24–25.) She assigned little weight to the treating source opinions of Dr. Cheeves (R. at 16) and Dr. Powers (R. at 25).

After determining Plaintiff's RFC, the ALJ found Plaintiff was capable of performing past relevant work as an admissions/enrollment counselor. (R. at 26.) The ALJ thus found Plaintiff was "not disabled." (R. at 27.)

## II.  LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not

disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.   ANALYSIS**

Plaintiff argues that the ALJ erred by: (1) concluding Plaintiff's mental impairments were non-severe; (2) failing to provide legally sufficient reasons for rejecting the opinions of Drs. Cheeves and Powers; 3) treating Plaintiff's diabetes mellitus, sleep apnea, fibromyalgia, and obesity as non-severe though she found these impairments severe; and (4) failing to support her credibility determination. (Doc. 12, Pl.'s Br. at 3.)

**A.   The ALJ Did Not Err in Concluding Plaintiff's Mental Impairments Were Non-Severe**

Plaintiff contends that the ALJ's two reasons for finding her mental impairments non-severe are incorrect, and thus the ALJ's conclusion finding the same is incorrect. (Pl.'s Br. at 5.) The reasons Plaintiff takes issue with are: 1) the ALJ found the medical evidence of record showed minimal functional limitations posed by Plaintiff's mental impairments; and 2) the ALJ found Plaintiff received minimal treatment for her mental impairments. (Pl.'s Br. at 5–6.) In support of her argument, Plaintiff largely relies on the opinion of Dr. Cheeves who Plaintiff asserts found her mental impairments severe and resulting in significant functional limitations. (Pl.'s Br. at 5.) The Court first considers whether the ALJ properly considered the medical opinion of Dr. Cheeves.

To reject a treating doctor's opinion that is contradicted by another doctor's opinion, an ALJ must provide specific and legitimate reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. Dr.

Cheeves was Plaintiff's treating doctor for depression and her functional assessment of Plaintiff is contradicted by the opinions of two consultative psychological examiners who found Plaintiff's presentation was consistent with depression, but that she was not likely to have any limitations in work-related functioning due to depression. (R. at 16, 460–63, 545–50, 561–62.)

The ALJ cites various reasons for rejecting the opinion of Dr. Cheeves. The ALJ notes that Dr. Cheeves's medical records were "minimal." (R. at 16.) She supports this statement with evidence from Dr. Cheeves's notes in 2012 that she had not seen Plaintiff since 2009, and yet that despite this lack of treatment time, Dr. Cheeves stated her medical opinion spanned from 2010 to the present. (R. at 561–62.) The ALJ also found that the opinion of Dr. Cheeves as to Plaintiff's limited functionality was conclusory and inadequately supported by clinical findings. (R. at 16–17.) This finding is supported by substantial evidence where Dr. Cheeves completed the functionality questionnaire without treating Plaintiff for several years and did not cite clinical or other findings to support her assessment. (R. at 16–17, 561–62.) The ALJ also discounted the opinion of Dr. Cheeves because Dr. Cheeves did not provide any specific work-related limitations. (R. at 16–17.) The ALJ took issue with Dr. Cheeves's "check-off report" as it failed to provide an explanation of the bases of her conclusion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Moreover, the ALJ cites Dr. Cheeves's own treatment notes that state Plaintiff's mood and self-care were improving and relies on this inconsistency in discounting Dr. Cheeves's opinion. (R. at 17.) The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in making her determination to give Dr. Cheeves's opinion regarding Plaintiff's limitations due to her mental impairments little weight. *See Bayliss*, 427 F.3d at 1216. Thus, the ALJ properly considered the opinion of Dr. Cheeves.

The ALJ's other reasons for finding Plaintiff's mental impairments non-severe are also supported by substantial evidence. The ALJ pointed to specific medical records that indicate while Plaintiff was depressed, her mood and condition improved with the use of

- 9 -

medication. (R. at 16.) The ALJ also cited records that show despite Plaintiff's testimony that she is confused "all the time," she had shown no or only minimal deficits in mental status examinations. (R. at 17.) While the Court does recognize that Plaintiff's treatment with Dr. Cheeves could be considered minimal, the Court does not find Plaintiff's treatment overall to be "minimal" where she continuously took medication for her depression. (*See, e.g.*, R. at 231, 338–39, 576–79.) Nonetheless, the Court finds that the ALJ's reasons for finding Plaintiff's mental impairments non-severe are supported by substantial evidence, and the Court will not reverse the ALJ's decision. *See Orn*, 495 F.3d at 630.

### B. The ALJ Did Not Err in Discounting the Opinions of Drs. Cheeves and Powers

Plaintiff contends that the ALJ erred by rejecting the opinions of Drs. Cheeves and Powers. (Pl.'s Br. at 8.) Both Drs. Cheeves and Powers were Plaintiff's treating doctors and thus, the same standard articulated above applies here—for an ALJ to reject a treating doctor's opinion that is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. The Court found the ALJ did not err in discounting Dr. Cheeves's opinion, which was limited to Plaintiff's mental impairments. The Court now assesses the ALJ's decision to discount the opinion of Dr. Powers, a treating physician whose opinion conflicts with other medical opinions.

Plaintiff first argues the ALJ committed harmful legal error by not addressing the factors for weighing medical opinions under 20 CFR § 404.1527(c). (Pl.'s Br. at 10.) The ALJ, however, did note that Dr. Powers was Plaintiff's long-term, treating physician and thus his opinion was entitled to greater weight under 20 CFR § 404.1527(c). (R. at 19, 25.) Nonetheless, the ALJ assigned little weight to the statements of Dr. Powers, including various medical questionnaires, based on other factors. (R. at 25.)

Plaintiff contends that the ALJ suggested Dr. Powers's medical diagnoses of sleep apnea, fatigue, fibromyalgia, and diabetes are unsupported by the evidence of record. (Pl.'s Br. at 11 (citing Tr. at 25).) The Court does not read the ALJ's opinion to go so far.

- 10 -

1    The ALJ accepts Plaintiff's diagnoses, but does not accept that they are as disabling as
2    some of Dr. Powers's opinions suggest, and the ALJ refers to the medical record to
3    support her finding. (R. at 25.) The Court finds that the ALJ provides specific and
4    legitimate reasons for her decision to afford little weight to the opinion of Dr. Powers,
5    and that overall, her reasons are supported by substantial evidence. *See Bayliss*, 427 F.3d
6    at 1216.

7    The ALJ discounted the medical opinions of Dr. Powers, in part, because of their
8    conclusory nature unsupported by specific medical records. (*See* R. at 25.) The ALJ cites
9    Dr. Powers's medical assessment to do work-related activities in which he states his
10   opinions are based on his medical findings of "peripheral neuropathy" and "instability of
11   gait due to diabetes." (R. at 574.) The ALJ correctly points out that Dr. Powers did not
12   previously document such gait and peripheral neuropathy issues, and thus the ALJ
13   properly questioned Dr. Powers's basis for his findings. (R. at 25.) The ALJ also takes
14   issue with Dr. Powers's conclusory statement that Plaintiff "cannot function" (R. at 25,
15   569), where Dr. Powers's support of that statement is "[Plaintiff] is overwhelmed by all
16   of her illnesses and symptoms" (R. at 569). The ALJ pointed to evidence in the record
17   that showed Plaintiff was able to function more than the summary opinions of Dr. Powers
18   indicated, especially because Plaintiff's heart-related, diabetes, and sleep apnea issues
19   had come under control. (R. at 25.) Because the Court finds the ALJ provided specific
20   and legitimate reasons supported by substantial evidence to support her determination to
21   give little weight to the opinion of Dr. Powers, the Court will not reverse the ALJ's
22   decision. *See Bayliss*, 427 F.3d at 1216.

23   **C.   The ALJ Did Not Err in Her Consideration of Plaintiff's Diabetes, Sleep Apnea, Fibromyalgia, and Obesity**
24
25   Plaintiff argues that despite the ALJ's finding that Plaintiff's diabetes mellitus,
26   sleep apnea, fibromyalgia, and obesity were severe impairments, the ALJ committed
27   legal error by effectively treating these issues as non-severe because her assessment
28   demonstrates she did not believe the issues pose serious limitations. (Pl.'s Br. at 12–13.)
     Plaintiff appears to be arguing that despite the ALJ's finding that these issues were

severe, the ALJ did not fully consider the associated limitations in determining Plaintiff's RFC.

Courts affirm an ALJ's RFC determination where the ALJ has applied the proper legal standard and supported her decision by substantial evidence. *Bayliss*, 427 F.3d at 1217. Here, in making her RFC determination, the ALJ provided a comprehensive assessment of all of Plaintiff's conditions and symptoms. (*See* R. at 19–26.) In concluding her opinion on RFC, the ALJ stated she "acknowledges that the claimant is sincere and has a number of chronic medical conditions with some resulting physical limitations," and that the "limitations have been properly accounted for in the [RFC] assessment." (R. at 26.) The statements Plaintiff cites as evidence of the ALJ's error are but several notations from the ALJ's extensive consideration of Plaintiff's RFC. To the extent the ALJ may not have fully considered the issues Plaintiff cites, Plaintiff has not shown that this alleged failure constitutes anything more than harmless error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotations marks omitted). The Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence as she took into account all the limitations for which there was record support, and thus the Court will not remand on this issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Bayliss*, 427 F.3d at 1217.

### D. The ALJ Did Not Err in Finding Plaintiff Not Fully Credible

Plaintiff argues the ALJ's credibility determination was factually incorrect and constituted harmful legal error. (Pl.'s Br. at 3, 13.) Plaintiff raises several issues the ALJ relied upon in finding Plaintiff not credible, and argues the record supports Plaintiff's testimony, and thus the ALJ's findings were incorrect. (Pl.'s Br. at 13–16.) Specifically, Plaintiff raises the following issues: 1) Plaintiff's testimony regarding her hypertension; 2) Plaintiff's non-compliance with her prescription of a VPAP machine for sleep apnea;

3) Plaintiff's testimony that she needed 2 or 3 naps a day; 4) Plaintiff's testimony regarding driving; and 5) Plaintiff's application for unemployment benefits. (Pl.'s Br. at 13–15.)

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted); (R. at 20.) The ALJ's finding that a claimant is not credible, "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (internal citations and quotation arks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal citations and quotation marks omitted).

First, Plaintiff argues the ALJ erred in discounting her testimony that she continued to have hypertension issues after her ablation procedure. (Pl.'s Br. at 13 (citing Tr. at 21, 45).) The ALJ did not reject this testimony, but rather, found Plaintiff was not limited to the extent she testified due to her hypertension issues. (R. at 20–21.) The ALJ provided specific reference to the medical record showing, via Plaintiff's reports and her treatment providers' reports, that Plaintiff's condition improved after her ablation procedure and treatment regimen. (R. at 21.) In addition, the ALJ identified treatment records showing Plaintiff's conditions were largely controlled with medication, which further supported the ALJ's determination. (R. at 21.) The Court finds the ALJ identified specific evidence that undermined Plaintiff's complaints and provided clear and

convincing reasons for her finding that Plaintiff's hypertension issues did not limit Plaintiff to the extent alleged. *See Brown-Hunter*, 806 F.3d at 492–93.

Second, Plaintiff contends the ALJ erred in suggesting she was not credible due to non-compliance with her prescription of a VPAP machine for sleep apnea. (Pl.'s Br. at 14 (citing R. at 22).) Plaintiff argues she did not use the device because she could not "tolerate" the machine and her prescription was modified to an "auto-titratable CPAP," suggesting non-compliance was valid. (Pl.'s Br. at 14.) The Sleep Disorders Center's examiner's report reflects that Plaintiff only used the VPAP machine for a "total of a few minutes since she has had it and therefore there is no compliance to really speak of." (R. at 275.) Although the report does show Plaintiff found the VPAP machine uncomfortable, and while Plaintiff was provided with alternative treatment, it was not improper for the ALJ to view Plaintiff's actions—only trying the VPAP machine for a few minutes— as non-compliant with the initial course of treatment. (*See* R. at 274–76.) The Court finds the ALJ identified specific evidence undermining Plaintiff's credibility as to her sleep apnea in light non-compliance with treatment and where the ALJ also considered Plaintiff's testimony that she was sometimes sleeping 8 to 11 hours a night and was sleeping well with the use of medication. *See Brown-Hunter*, 806 F.3d at 493; (R. at. 22.)

Third, Plaintiff argues the ALJ erred in finding her testimony that she needed 2 or 3 naps a day was not supported by the treatment record. (Pl.'s Br. at 14 (citing R. at 22).) In evaluating Plaintiff's symptom testimony after Plaintiff produced objective medical evidence of her underlying impairments, "[the] ALJ may not reject a [Plaintiff's] subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Nonetheless, while "lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Id*. at 681. While it may have been improper for the ALJ to reject Plaintiff's testimony regarding her naps to the extent the ALJ solely relied on the lack of medical evidence, Plaintiff has not shown how the ALJ's decision to discount this testimony resulted in

- 14 -

1 harmful error meriting remand, and the Court will not remand on this basis. *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle*, 533 F.3d at 1162.

Fourth, Plaintiff states the ALJ "suggests Plaintiff denied driving at the hearing." (Pl.'s Br. at 14 (citing R. at 23).) It appears Plaintiff may have provided an incorrect citation to the ALJ's opinion, but that she intended to cite the ALJ's statement that Plaintiff's husband reported she drove, despite that "she essentially denied [driving] at the time of the hearing, [and] report[ed] of driving to both consultative physiological examiners." (R. at 24.) The Court agrees with Plaintiff that she testified that she was afraid of driving and that her impairments affected her ability to drive, but that she did not testify that she did not drive, and thus, the ALJ should not have discounted her credibility on this basis. (R. at 24, 42.) Again, however, Plaintiff does not show how this consideration resulted in anything more than harmless error, and the Court will not remand the ALJ's credibility determination on this basis, especially where the ALJ provided numerous other reasons for discounting Plaintiff's credibility. *See Molina*, 674 F.3d at 1115.

Finally, Plaintiff argues it was error for the ALJ to consider that Plaintiff had applied for and received unemployment benefits in her finding that Plaintiff's testimony that she could not work full-time was not credible. (Pl.'s Br. at 14 (citing R. at 24).) As Plaintiff correctly notes, the federal regulation sections the ALJ cites to support her contention that she "must" consider unemployment benefits in determining whether Plaintiff is disabled, are only general sections describing what evidence must be considered and do not address unemployment benefits or credibility. *See* 20 CFR 404.1512(b), 416.912(b); (R. at 24.) However, the ALJ also acknowledged that a plaintiff need not choose between applying for unemployment and disability benefits. (R. at 24.) Plaintiff does not provide any legal support for her contention that it was legal error for

the ALJ to consider Plaintiff's application for unemployment benefits. The Court will not create arguments for Plaintiff, and without any legal support, the Court cannot find the ALJ committed legal error in considering Plaintiff's unemployment benefits history and finding it "may indicate that the [Plaintiff] herself believes she is capable of working. (R. at 24.)

The Court finds that some of the ALJ's reasons for finding Plaintiff not credible are not supported by clear and convincing evidence. The Court, however, finds there remains substantial, clear and convincing evidence supporting the ALJ's conclusions on Plaintiff's credibility, and the errors noted do not negate the validity of the ALJ's ultimate credibility determination. *See Carmickle*, 533 F.3d at 1162. Accordingly, the errors are harmless and do not warrant reversal. *Id*.

### E. The Credit-As-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which were there a basis for remand, would result in remand of Plaintiff's case for payment of benefits rather than remand for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–102 (9th Cir. 2014); (Pl.'s Br. at 7–8.) Because the Court has found there is no basis for remand, neither the ordinary remand rule nor the credit-as-true rule applies. *See Treichler*, 775 F.3d at 1099–102.

**IT IS THEREFORE ORDERED** affirming the decision of the Administrative Law Judge (R. at 9–27) as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 9th day of August, 2016.

Honorable John J. Tuchi
United States District Judge